# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Ronald Napier,
     Petitioner


    vs                     Case No. 1:01cv511
                             (Spiegel, J.; Perelman, M.J.)


James Haviland,
     Respondent

---

## REPORT AND RECOMMENDATION

---

Petitioner is a prisoner in state custody who is incarcerated at the Southern Ohio Correctional Facility in Lucasville, Ohio. Petitioner is represented by counsel from the Ohio Public Defender's Office, who has filed this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on petitioner's behalf. This matter is before the Court on the petition, which has been allowed to be amended to include two additional grounds for relief, respondent's "Answer/Return Of Writ," petitioner's summary judgment motion, as well as the record of the challenged state criminal proceedings provided by respondent. (*See* Docs. 1, 3, 14, 17, 18, 19).


## Factual And Procedural Background

On August 27, 1998, petitioner was indicted by the Hamilton County, Ohio, grand jury on one count of rape as defined in Ohio Rev. Code § 2907.02(A)(2) with an attached "sexually violent predator" specification, and one count of gross sexual imposition as defined in Ohio Rev. Code § 2907.05(A)(1). (*See* Doc. 17, Ex. A). After a trial before a jury, petitioner was found guilty of the rape and gross sexual imposition charges. (*See id.,* Exs. B, C). Thereafter, on December 8, 1998, another

hearing was held before the trial court on the "sexually violent predator" specification, wherein it was determined that petitioner "is, in fact, guilty as charged beyond a reasonable doubt, of Specification One to Count 1, and that, in fact, he is a sexually violent predator for purposes of the indictment." (*See* Doc. 18, Attachment 4, Tr. 501-02).[1] On the same date, after rendering its decision on the specification, the trial court sentenced petitioner to consecutive prison terms of ten (10) years for the rape offense, five (5) years on the attached "sexually violent predator" specification, and one and one-half (1 ½) years for the gross sexual imposition offense. (*See* Doc. 17, Ex. E; *see also* Doc. 18, Attachment 4, Tr. 510-11).

With the assistance of counsel, petitioner filed a direct appeal to the Ohio Court of Appeals, First Appellate District, raising among others, the following assignments of error:

**Assignment Of Error VII:** The appellant's right to be free from double jeopardy was violated when the trial court erred to the prejudice of the appellant by failing to merge Counts One and Two.

**Assignment Of Error XIII:** The trial court denied the appellant of his right to a jury trial when it refused to allow the jury to decide the sexual predator specification.

(*Id.*, Ex. F). On December 30, 1999, the Court of Appeals affirmed the trial court's judgment. (*Id.,* Ex. H).

---

[1]Ohio Rev. Code § 2941.148 and Chapter 2971 contain the relevant statutory provisions governing the "sexually violent predator" specification. These provisions are criminal, "penalty provisions" that apply to "enhance the offender's sentence." *See State v. Williams,* 728 N.E.2d 342, 360 (Ohio 2000). It appears from the trial transcript that the trial court properly referred to these provisions in making its determination of petitioner's guilt "beyond a reasonable doubt" on the specification. (*See* Doc. 18, Attachment 4). It is noted, however, that the entry submitted by respondent as an exhibit to the return of writ reflects the trial court's determination of petitioner's "sexual predator" status under a different statutory provision set forth in Ohio Rev. Code § 2950.09(B), which governs the classification and registration of sex offenders upon their release from prison. (*See* Doc. 17, Ex. D). This provision, in contrast to Ohio Rev. Code §§ 2941.148 and 2971 *et seq.*, is civil in nature, requiring only "clear and convincing evidence" to establish the offender's status as a "sexual predator, habitual sex offender or sexually oriented offender" for purposes of the "nonpunitive notice and registration requirements" of Chapter 2950. *See Williams,* 728 N.E.2d at 360. Ohio Rev. Code § 2950.09(B) does not apply to the criminal sentencing context, where the State's burden is controlled by the "beyond a reasonable doubt" standard.

2

Petitioner next sought leave to appeal to the Ohio Supreme Court. In the memorandum in support of jurisdiction, counsel raised, among other claims, the following propositions of law:

> **Proposition Of Law No. VII:**  When the facts indicated that the event was one uninterrupted episode, the court of appeals erred when it ruled that the crimes were not subject to merger pursuant to R.C. 2941.25 and erroneously placed the burden of proving the same animus upon the Appellant when it looked to what was not in the record.

> **Proposition Of Law No. X:**  Where the Appellant did not elect to have the trial court decide the sexual predator specification, but indicated prior to the verdict that the Appellant wished to have the jury determine the specification, it is error for the trial court to refuse to allow the jury to decide the specification because the record does not contain a knowing and voluntary waiver.

(*Id.,* Ex. I).  On May 3, 2000, the Ohio Supreme Court issued an Entry denying leave to appeal and dismissing the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. K).

On July 31, 2001, counsel from the Ohio Public Defender's Office commenced this action on petitioner's behalf, alleging initially two grounds for relief:[2]

> **Ground One:**  At trial, the Petitioner had a right to have any fact that increased the penalty for a crime beyond the prescribed statutory maximum–other than the fact of a prior conviction–submitted to a jury and proved beyond a reasonable doubt.  That right is protected by the Fifth and Fourteenth Amendment guarantee to due process and the Sixth Amendment guarantee of trial by jury.  That right was violated when the trial judge, and not the jury, found that Petitioner was a sexually violent predator and sentenced Petitioner to five additional years of incarceration, to be served consecutively to the maximum sentence for the underlying substantive offense.

---

[2]These grounds for relief were rephrased in the amended petition and, therefore, are quoted verbatim from the amended petition.  (*See* Docs. 1, 3).

**Ground Two:** The Petitioner's right not to be compelled to be a witness against himself and his right to due process, both guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, as well as traditional rules of lenity and assignment of burden of proof, were all violated. The Ohio courts placed a burden upon Petitioner to produce evidence supporting the imposition of one sentence as opposed to the State's bearing the burden of producing evidence supporting the imposition of multiple sentences.

(Doc. 3, AMENDED PETITION ADDENDUM to Page 4).

On September 14, 2001, a month and a half after initiating the instant federal habeas proceeding, petitioner's attorney from the Ohio Public Defender's Office filed an application to reopen petitioner's direct appeal with the Ohio Court of Appeals pursuant to Ohio R. App. P. 26(B). (Doc. 17, Ex. L). In the application to reopen, it was argued that petitioner had been denied his right to effective assistance of counsel on direct appeal because petitioner's appellate attorney "failed to raise crucial assignments of error." (*Id.,* p. 1). Counsel specifically contended that petitioner's appellate counsel provided ineffective assistance when, among other things, (1) he did not claim as an assignment of error that petitioner's trial attorney was ineffective in failing "to frame [petitioner's] objection to the denial of his right to have a jury determine the sexually violent predator specification" as a federal due process violation, and (2) he failed to allege as an assignment of error that petitioner's prior conviction for gross sexual imposition, which was entered nearly three years before the effective date of the sexually violent predator specification statute, constituted "insufficient evidence" to sustain a finding of guilt on the specification. (*Id.,* Assignments of Error I and III, pp. 4, 5-6).

On October 19, 2001, while petitioner's application for reopening was pending before the Ohio Court of Appeals, petitioner's attorney filed with this Court a motion for leave to file an amended petition to include the following additional grounds for relief:

**Ground Three:** The trial court erred when it convicted [petitioner] of a sexually violent predator specification, in the absence of sufficient evidence to support a conviction. This violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

4

**Ground Four:** [Petitioner] was denied his Sixth Amendment right to the effective assistance of counsel both at trial and on direct appeal. [Petitioner's] trial counsel failed to frame his objection to the denial of his right to have a jury determine the sexually violent predator specification as a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. [Petitioner's] appellate counsel failed to raise trial counsel's ineffectiveness as an assignment of error on direct appeal.

(Doc. 3, AMENDED PETITION ADDENDUM to Page 4).

On November 27, 2001, the Ohio Court of Appeals denied petitioner's application to reopen his direct appeal. (Doc. 17, Ex. O). In so ruling, the state appellate court in relevant part reasoned:

App.R. 26(B) requires an application to reopen an appeal to be filed with the court of appeals within ninety days from the date on which the appellate judgment was journalized, unless the applicant can show good cause for filing at a later time. This court's judgment was journalized on December 30, 1999, and the appellant filed his application almost eighteen months after the ninety-day period had expired.

The appellant initially argues that his delay was justified, because the Ohio Supreme Court did not act to disallow the appeal until two months after the ninety-day filing period had expired. The court of appeals retains jurisdiction to rule upon a timely filed App.R. 26(B) application after an appellant has perfected his appeal from the court of appeals to the supreme court. See S.Ct.Prac.R. II(2)(D)(1). Therefore, the pendency of the appellant's appeal from this court to the supreme court did not preclude the appellant from filing, and thus cannot be said to constitute good cause for his delay in filing, his application to reopen his appeal.

The appellant further contends that the filing delay was justified, because the same counsel had represented him on appeal to this court and to the Ohio Supreme Court. Although counsel is not expected to argue in an application to reopen his own ineffectiveness, . . ., such cause will excuse a filing delay "only while [the cause] exists, not for an indefinite period."

5

. . .  The fact that the same counsel represented the appellant on appeal to this court and to the supreme court does not provide good cause for a filing delay of more than sixteen months after the supreme court disallowed the appellant's appeal. . . .

Finally, in an affidavit filed in response to the state's motion to dismiss, counsel for the appellant, who was assigned in July 2000 by the office of the state public defender to pursue federal habeas corpus relief for the appellant, attributes the filing delay to his inexperience and ignorance concerning post-appeal procedures.  To the extent that counsel for the appellant may, by this admission, seek to fall upon the sword of his own incompetence, we note that the appellant had no right to counsel, competent or otherwise, to assist him in filing his application, . . ., and that the appellant's own ignorance of the law, let alone that of his counsel, does not constitute good cause for a filing delay. . . .  Nor will the appellant's misplaced reliance upon counsel excuse an appellant from ensuring that his application is timely filed. . . .

(*Id.*) (citations to state cases omitted).

Petitioner's counsel sought leave to appeal the Ohio Court of Appeals' decision to the Ohio Supreme Court.  (*Id.,* Ex. P).  On March 4, 2002, the Ohio Supreme Court issued an Entry summarily dismissing the "appeal as not involving any substantial constitutional question."  (*Id.,* Ex. R).

Procedural issues have been raised by both parties as the instant matter has progressed towards final review by the Court.

First, petitioner filed a motion for a stay and to hold this case in abeyance pending the exhaustion of his then-pending state remedies on his application for reopening filed with the state court of appeals in September 2001 (*see* Doc. 4), but withdrew that motion for stay after the Ohio Supreme Court issued its final ruling dismissing petitioner's appeal from the Ohio Court of Appeals' decision denying his application for reopening (Doc. 8).  Although this case initially posed an exhaustion issue during the pendency of the state proceedings on petitioner's application to reopen his direct appeal, the question was rendered moot by the Ohio Supreme Court's final ruling dismissing petitioner's appeal in the state matter.

6

It now appears that petitioner has exhausted all available state remedies with respect to all four grounds for relief that he has presented to this Court and, therefore, that the petition as amended is not subject to dismissal on exhaustion grounds.

Second, respondent filed a memorandum opposing petitioner's motion for leave to file an amended petition and a motion to dismiss the two additional grounds for relief asserted in the proposed amended petition on the ground that they are barred from review under the one-year statute of limitations governing federal habeas petitions set forth in 28 U.S.C. § 2244(d)(1). (Doc. 6). On July 16, 2002, the then-presiding United States Magistrate Judge issued a Report and Recommendation recommending that petitioner's motion for leave to file an amended petition be denied and that respondent's motion to dismiss the amended petition as time-barred be granted. (Doc. 10). On October 9, 2002, the presiding district judge, the Honorable S. Arthur Spiegel, entered an Order overruling the Report and Recommendation and granting petitioner's motion for leave to file the amended petition. (Doc. 14). In this Order, Judge Spiegel expressed no opinion as to whether the two additional grounds for relief alleged in the amended petition are subject to dismissal on statute of limitations grounds under the "relation back" argument asserted by respondent in his motion to dismiss. (*See id.,* pp. 8-9). The Court ruled only that the amended petition was "properly filed" before any responsive pleading had been submitted by respondent and, therefore, leave of court was not required for its filing. (*Id.*). The Court stated that once the amended petition was filed as permitted by the Order, respondent could then file a responsive pleading attacking "the petition on whatever grounds Respondent deems appropriate, including the 'relation back' requirement." (*Id.,* p. 9). In so holding, the Court essentially ruled that the statute of limitations defense had been prematurely asserted by respondent before the amended petition had been filed, but could be reargued as a defense in the return of writ.

In the Answer/Return of Writ, respondent has reasserted the statute of limitations defense with respect to the two additional claims (Grounds Three and Four) alleged in the amended petition. (Doc. 17, Brief, pp. 7-11). The statute of limitations does not constitute a jurisdictional bar to federal habeas review. *See Scott v. Collins,* 286 F.3d 923, 927 (6th Cir. 2002); *see also Jones v. Smith,* No. CIV.01-CV-73958-DT, 2002 WL 1480811, at *3 (E.D. Mich. June 26, 2002) (unpublished) ("the statute of limitations governing federal habeas petitions is "not a jurisdictional prerequisite which would bar review by the federal courts if not met"). Since the time respondent filed his Answer/Return of Writ, the United States Court of Appeals for the Sixth Circuit has issued decisions, including an unpublished panel decision refusing to follow published

Sixth Circuit precedents considering the effect applications for reopening in the Ohio courts have on the running of the statute of limitations, *see Lambert v. Warden, Ross Correctional,* 81 Fed.Appx. 1 (6th Cir. Sept. 2, 2003) (not published in Federal Reporter). These cases raise significant, unaddressed questions regarding the merits of respondent's statute of limitations defense under the circumstances of this case. Accordingly, the Court declines to address respondent's statute of limitations defense, and instead will assume, without deciding, that petitioner's additional claims for relief alleged in Grounds Three and Four are not time-barred. Therefore, the Court will proceed to address each of petitioner's four grounds for relief alleged in the amended petition in light of the remaining arguments asserted by respondent in his Answer/Return of Writ.

# OPINION

## A. Petitioner Is Not Entitled To Relief Based On The Ineffective Assistance of Counsel Claims Alleged In Ground Four Of The Amended Petition

In Ground Four of the amended petition, petitioner alleges he was denied effective assistance of counsel when his trial attorney failed to "frame his objection" to the court's refusal to allow a jury trial on the "sexually violent predator" specification as a federal constitutional issue, and when his attorney on direct appeal failed to assert this claim of trial counsel ineffectiveness as an assignment of error on direct appeal. (Doc. 3, AMENDED PETITION ADDENDUM to Page 4). These claims were presented for the first time to the state courts in petitioner's application to reopen his direct appeal, which was denied by the Ohio Court of Appeals on the state procedural ground that petitioner had not shown "good cause" for his untimely filing of the application. (*See* Doc. 17, Ex. L, pp. 4-6; Ex. O). Respondent has not argued in the return of writ that the claims are waived because the state appellate courts relied on an adequate and independent state procedural bar in rejecting them. *See, e.g., Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991); *Taqwiim v. Johnson,* 229 F.3d 1154 (table), No. 99-3425, 2000 WL 1234322, at **3 (6th Cir. Aug. 22, 2000) (unpublished) (citing *Levine v. Torvik,* 986 F.2d 1506, 1517 n.8 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993)), *cert. denied,* 531 U.S. 1089 (2001). Therefore, petitioner has not been provided the opportunity to address such an argument, and the Court will assume without deciding that the ineffective assistance of

counsel claims are not waived and thus are subject to review on the merits.[3]

In order to establish his trial and appellate counsel's performance was constitutionally ineffective under the applicable standard of review established by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984), petitioner must demonstrate: (1) his attorneys made such serious errors that they were not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) his attorneys' deficient performance prejudiced the defense by undermining the reliability of the trial and direct appeal results. *See Strickland,* 466 U.S. at 687.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsels' representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *See id.* at 688. Judicial scrutiny of counsels' performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsels' perspective at the time of the conduct. *Id.* at 689. In determining whether or not counsels' performance was deficient, the Court must indulge a strong presumption that counsels' conduct fell within the wide range of reasonable professional assistance. *See id.*

In order to satisfy the second "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsels' errors, the result of the trial and appeal proceedings would have been different. *See id.* at 694.

---

[3]In any event, the waiver issue posed by this case is complicated by the fact that one of petitioner's arguments to the state courts for "good cause" was that the filing delay was due to the "inexperience and ignorance" of the Ohio public defender assigned in July 2000 to pursue federal habeas relief for him. The Ohio Court of Appeals rejected this argument on the ground that petitioner "had no right to counsel, competent or otherwise, to assist him in filing his application." (Doc. 17, Ex. O, p. 2). However, in *White v. Schotten,* 201 F.3d 743, 752-53 (6th Cir.), *cert. denied,* 531 U.S. 940 (2000), the Sixth Circuit expressed a different view when it held that an application for reopening is part of the direct review process in Ohio, to which the Sixth Amendment right to effective assistance of counsel attaches. *But cf. Lambert,* 81 Fed.Appx. at 5, 8-10 (although considering itself "bound to follow the holding of *White* that 26(B) applications are part of direct review," the Sixth Circuit panel majority expressed its own contradictory opinion that "26(B) applications should be classified as collateral, rather than direct, review," particularly in light of the fact that "the Ohio courts, the authoritative interpreters of Ohio procedure, are unanimous in considering 26(B) applications to be part of collateral review and have held so repeatedly before and after *White*"). Given the present uncertain state of the law in the Sixth Circuit, it is better in this case to leave the waiver question unresolved.

9

Petitioner has met his burden if he shows that the decisions reached by the trial court and the Ohio Court of Appeals would "reasonably likely have been different absent the errors." *See id.* at 695.

The Court need not examine the question of whether counsels' performance was deficient before addressing the question of whether petitioner was prejudiced by counsels' performance. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *See id.* at 697.

In this case, after the jury found petitioner guilty of the underlying rape charge, defense counsel stated on the record at the beginning of a hearing on the remaining "sexually violent predator" specification, followed by sentencing, that "the first issue with regard to this hearing, is it is our contention, our position, my client will not elect to be tried by the court on this. He wants the jury to make this determination." (Doc. 18, Attachment 4, Tr. 438). Counsel stated:

> Judge, as we talked about this last week, this is the first time I've been involved in this specific type of hearing. Prior to the verdict coming in, we asked the Court if it would hold the jury in the event of a guilty verdict so that he could make that election and have the jury actually take part in this hearing.

> Judge, you've got the statute 2971.02. As we read it, it requires that the hearing be before the jury unless he waives that right and elects to have the Court make this determination.

> Judge, last night I filed some material that I picked up at a seminar back in February of 1997, and it has an outline of the trial of the sexually violent predator specification. And this document says that the defendant elects whether the Judge or jury will determine the specification. The determination is not made until after a verdict of guilty on the underlying offense. . . .

> That's the legal basis that we have to ask that the jury be reimpanelled to make this determination, please.

(*Id.,* Tr. 438-39).

In making his argument, defense counsel cited only an Ohio statutory provision specifically addressing the determination of a sexually violent predator specification by court or by jury. The statute provides in relevant part that "the defendant may elect to have the court instead of the jury determine the specification," and that if "the defendant does not elect to have the court determine the specification, the defendant shall be tried before the jury on the charge of the offense, and following a verdict of guilty on the charge of the offense, the defendant shall be tried before the jury on the sexually violent predator specification." If, on the other hand, "the defendant elects to have the court determine the specification, the defendant shall be tried on the charge of the offense before the jury, and, following a verdict of guilty on the charge of the offense, the court shall conduct a proceeding at which it shall determine the specification." Ohio Rev. Code § 2971.02.

Petitioner contends that his trial counsel was ineffective because he did not explicitly "bring to the trial court's attention the federal constitutional arguments raised in Ground One" of the petition. Ground One alleges that petitioner had a right guaranteed by the Sixth and Fourteenth Amendments to have "any fact that increased the penalty for a crime beyond the statutory maximum–other than the fact of a prior conviction–submitted to a jury" for determination, which was violated when the trial judge, as opposed to the jury, found petitioner to be a sexually violent predator and based on that determination sentenced him to five additional years of incarceration beyond the prescribed ten-year statutory maximum sentence imposed for the underlying rape offense. (*See* Doc. 3, AMENDED PETITION ADDENDUM to Page 4, Grounds One and Four).

The constitutional claim alleged in Ground One arises from a decision rendered by the Supreme Court on June 26, 2000, nearly two and one-half years *after* petitioner's trial and approximately six months *after* the Ohio Court of Appeals issued its final decision rejecting petitioner's assignments of error on direct appeal. In that decision, *Apprendi v. New Jersey,* 530 U.S. 466, 476-90 (2000), the Supreme Court held the Fourteenth Amendment right to due process and the Sixth Amendment right to trial by jury, taken together, entitle a criminal defendant to a jury determination that the defendant is guilty beyond a reasonable doubt of any fact, other than the fact of a prior conviction, which increases the penalty for a crime beyond the prescribed statutory maximum. The *Apprendi* Court intimated that its decision was "foreshadowed" by its March 24, 1999 decision in *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999), also decided *after* petitioner's trial and conviction, wherein it was noted on direct review of a federal conviction that "under the Due Process Clause of the Fifth Amendment and the notice

and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *See Apprendi,* 530 U.S. at 476. By the same token, the *Apprendi* Court also recognized a line of cases had developed from its earlier statement in *McMillan v. Pennyslvania,* 477 U.S. 79, 93 (1986), that "there is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact." Apparently, in *McMillan,* the term "sentencing factor" was first coined to distinguish those facts the sentencing court may consider in the exercise of its discretion in determining the appropriate sentence to be imposed, from "elements" of a particular offense that must be proved beyond a reasonable doubt at a trial before a jury as guaranteed by the Sixth Amendment and Fourteenth Amendment's Due Process Clause. *See Apprendi,* 530 U.S. 485-86; *McMillan,* 477 U.S. at 85-86, 91-93. "Conscious of the likelihood that legislative decisions [regarding factors to be considered by a sentencing court] may have been made in reliance on *McMillan,*" the Court in *Apprendi* did not overrule *McMillan,* which involved a challenge to a state's Mandatory Minimum Sentencing Act that "operat[ed] solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it." *See Apprendi,* 530 U.S. at 485-87 & n.13 (quoting *McMillan*, 477 U.S. at 88). Instead, the *Apprendi* Court limited *McMillan's* "holding to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict–a limitation identified in the *McMillan* opinion itself." *Apprendi,* 530 U.S. at 487 n.13.

Although the Supreme Court has not considered the issue, the vast majority of lower courts, including the United States Court of Appeals for the Sixth Circuit, have concluded *Apprendi* announced a "new" constitutional rule which may not apply retroactively on collateral review of cases decided prior to it. *See, e.g. Goode v. United States,* 305 F.3d 378, 382-85 (6th Cir.) (and 11th, 8th, 4th and 9th Cir. cases cited therein) (involving motion under 28 U.S.C. § 2255 challenging federal sentence), *cert. denied,* 537 U.S. 1096 (2002); *Green v. Herbert,* No. 01CIV.11881SHSAJP, 2002 WL 1587133, at *20 n.38 (S.D.N.Y. July 18, 2002) (unpublished) (noting 9th and 4th Cir. cases involving § 2254 petitions and 4th, 10th, 7th, 3rd, 11th, 8th, and D.C. Cir. cases involving § 2255 motions); *see also Regalado v. United States,* 334 F.3d 520, 526-27 (6th Cir.), *cert. denied,* 124 S.Ct. 585 (2003); *Reynolds v. Cambra,* 290 F.3d 1029, 1030 (9th Cir. 2002) (involving § 2254 petition); *cf. Harris v. United States,* 536 U.S. 545, 581 (Thomas, J., dissenting) ("No Court of Appeals, let alone this Court, has held that *Apprendi* has retroactive effect."). In *Goode,* the Sixth Circuit stated:

> *Apprendi* clearly establishes a "new rule," as the result of *Apprendi* was not controlled by any "precedent existing at the time the defendant's conviction became final." . . . Before the Supreme Court decided *Apprendi,* federal circuits that considered the question of the constitutionality of drug quantities being determined by the court rather than the jury had concluded that this was an acceptable procedure because drug quantity was a sentencing factor, not an element of the offense. . . .

*Goode,* 305 F.3d at 385.

In Ohio, the sexually violent predator specification is not a separate crime, but rather a sentence enhancement provision triggered only upon a finding by a jury of guilt beyond a reasonable doubt on the underlying charged offense. *See* Ohio Rev. Code §§ 2941.148, 2971.01(H)(1) and (I), 2971.02, 2971.03; *see also State v. Williams*, 728 N.E.2d 342, 360 (Ohio) (sexually violent predator specification provisions apply "to those *convicted* of a sexually violent offense" and "are penalty provisions which enhance the offender's sentence") (emphasis added), *cert. denied,* 531 U.S. 902 (2000); *State v. Sherrard,* No. 02CA008065, 2003 WL 187592, at *4 (Ohio Ct. App. Jan. 29, 2003) (unpublished) (a "sexually violent predator specification potentially enhances the prison term of the underlying offense to which the specification is attached," and "an essential element of a sexually violent predator specification is a conviction for the underlying sexually violent offense to which the specification is attached"), *appeal dismissed,* 789 N.E.2d 1117 (Ohio 2003). At the time of petitioner's trial and direct appeal, the state of the law existing in the wake of *McMillan* and prior to *Apprendi* was such that both petitioner's trial and appellate counsel could have reasonably concluded the provision set forth in Ohio Rev. Code § 2971.02, as opposed to the Sixth Amendment, provided the support for finding petitioner had a right to a jury trial on the specification, which otherwise could be considered merely a "sentencing factor" within the court's discretion to determine. *Cf. State v. Allen*, 506 N.E.2d 199, 201 (Ohio 1987) (holding with respect to analogous prior conviction specification that a prior conviction determination, which merely increased the penalty to be imposed by the court and did not enhance the degree of the underlying criminal offense, was "strictly a sentencing consideration for the court").

Accordingly, this Court concludes that given the state of the law at the time of petitioner's trial and direct appeal, petitioner's trial and appellate counsel did not act unreasonably when, in challenging the trial court's refusal to allow a jury trial on the specification, they failed to assert an *Apprendi*-type constitutional argument and instead relied on the then stronger argument that the right to a jury trial on the specification is

implicit in the election of tribunal provision contained in Ohio Rev. Code § 2971.02. *Cf.* Jack A. Guttenberg, *Recent Changes in Ohio Sentencing Law: The Questions Left Unanswered,* 15 U. Tol. L. Rev. 35, 45, 47, 49, 53 (1983) (concluding that by granting the accused the right to elect to have sentencing specifications tried by the court at a separate sentencing hearing after a trial by jury on the underlying charge, the then recent amendments to Ohio sentencing statutes "clearly imply" the accused has the right to a jury trial on such specifications). Other courts facing this issue in analogous cases have reached the same conclusion, holding that an attorney's failure to anticipate or predict the *Apprendi* decision does not fall below the objective standard of reasonableness under the first prong of the *Strickland* test. *See, e.g., Brown v. United States,* 311 F.3d 875, 878 (8th Cir. 2002) (citing *United States v. Smith,* 241 F.3d 546, 548 (7th Cir.), *cert. denied,* 534 U.S. 918 (2001), and *United States v. Ardley,* 273 F.3d 991, 993 (11th Cir. 2001) (Carnes, J., concurring) (on denial of petition for rehearing en banc), *cert. denied,* 535 U.S. 979 (2002)), *cert. denied,* 124 S.Ct. 229 (2003); *Valenzuela v. United States,* 261 F.3d 694, 700 (7th Cir. 2001); *United v. Shewmaker,* 48 Fed.Appx. 321, 322-23 (10th Cir. Oct. 18, 2002) (not published in Federal Reporter), *cert. denied,* 537 U.S. 1218 (2003); *United States v. Hernandez,* 137 F.Supp.2d 919, 927 (N.D. Ohio 2001) (rejecting the § 2255 petitioner's argument that appellate counsel was ineffective in failing to raise any claims under *Apprendi,* which was "decided well after the conclusion of petitioner's direct appeal");[4] *cf. State v. Gates,* No. 78120, 2002 WL 1813843, at *4-5 (Ohio Ct. App. Aug. 5, 2002) (unpublished) (rejecting petitioner's claim in application to reopen his appeal that he was denied effective assistance of appellate counsel when his attorney on direct appeal failed to raise an *Apprendi* challenge to his sentence enhancement by the court on a repeat violent offender specification), *appeal dismissed,* 778 N.E.2d 1051 (Ohio 2002).

In sum, petitioner has not demonstrated under the first prong of the *Strickland* test that his attorneys at trial and on direct appeal acted outside the wide range of reasonable professional assistance when they failed to assert a constitutional, *Apprendi*-type argument in challenging the trial court's refusal to allow a jury trial on the sexually violent predator specification. Because petitioner has not shown that the performance of his counsel was constitutionally deficient, as required by the first part of the *Strickland* test, he cannot prevail on his claim that his counsels' conduct amounted to ineffective assistance in violation of the Sixth Amendment. *See Strickland,* 466 U.S. at 697. Therefore, he is not entitled to habeas corpus relief based on the ineffective assistance of counsel claim alleged

---

[4]In *Goode,* 305 F.3d at 382-85, the Sixth Circuit overruled *Hernandez* to the extent that the district court held in that case that *Apprendi* may apply retroactively to cases on collateral review. *See Hernandez,* 137 F.Supp.2d at 932.

in Ground Four of the petition.

### B.  Petitioner Is Not Entitled To Relief Based On His Claim Alleged In Ground One That He Was Denied His Constitutional Right To Have The Sexually Violent Predator Specification Tried By A Jury

As stated above in addressing Ground Four of the amended petition, *see supra* p. 11, petitioner alleges in Ground One that he "had the right [guaranteed by the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment] to have any fact that increased the penalty for a crime beyond the prescribed statutory maximum–other than the fact of a prior conviction– submitted to a jury and proved beyond a reasonable doubt." (Doc. 3, AMENDED PETITION ADDENDUM to Page 4).  He contends that the trial court deprived him of this right when it refused defense counsel's on-the-record request to have the sexually violent predator specification tried before a jury and, based on the subsequent finding that petitioner was a sexually violent predator, sentenced him to five additional years of incarceration "to be served consecutively to the maximum sentence for the underlying substantive offense." (*Id.*).

It is clear from the record that the trial court refused defense counsel's request for a jury trial on the specification based on its "understanding" from an off-the-record "conversation" in chambers with counsel prior to trial on the charged substantive offenses that defense counsel had elected to have the specification decided by the court instead of the jury. (*See id.,* Ground One, Supporting Facts; Doc. 18, Attachment 4, Tr. 440-41). The issue first arose as a matter of record immediately after the jury was discharged at the close of trial on December 4, 1998 upon rendering guilty verdicts on the rape and gross sexual imposition counts.  The record reflects in pertinent part as follows:

(Jury discharged at 3:55 p.m.)

THE COURT:  Please be seated, ladies and gentlemen, for just a second.  We had a discussion in chambers in regards to the specification.  *I appreciate both counsel coming to me before the jury came in.*  And there was an indication as to whether or not Mr. Napier wants this matter, the specification charge heard by the jury or by the Court.  Anything on that at this point, [defense counsel]?

[DEFENSE COUNSEL]: Judge, I would just like the record to reflect that we did call this to your attention, because if the verdict was not guilty,

obviously, it was not an issue.  But if it was guilty, that it's my reading of the statute that it's his right to have the specification determined by the jury, or by the Court if he waives that right.

And prior to trial we had talked about the specification, and I had indicated it was my understanding the specification did not go to the jury in its case in chief, and p[er]haps you thought we were talking about it had to be tried to you.

Judge, I would state on the record this is the first time I've done a sexually violent predator specification hearing, and as I read that statute, *I asked the Court before the jury was discharged, not to discharge the jury because I think the jury has to determine this unless my client is willing to waive that right and have you determine it.*

****

THE COURT:  Well, I'll put on the record, and I start this with this is totally my fault.  I had a conversation in chambers before.  I should do everything on the record.  I apologize to everyone for that.  From now on I will do all these kinds of things on the record.

My understanding of the conversation with you . . ., was that you did not want the specification heard by the jury.  You did not specifically say that I would determine it, but it was my understanding that the jury would not.  Therefore, I made no decisions, no provisions whatsoever for this matter to be heard by the jury.  I certainly would have prior to the picking or during the course of the picking the jury, or at some point indicate to them there may be another hearing.

I did not do so in part because of my reliance on my interpretation of the conversation.  I apologize for that. . . .

I, at this point, have determined that I will make the determination as to whether or not Specification One to Count 1 is applicable.  I'll do that at another hearing on another date.  I'm not going to do that today. . . .

(Doc. 18, Attachment 3, Tr. 430-32) (emphasis added).

16

As mentioned earlier with respect to Ground Four, *see supra* p. 10, defense counsel made clear at the beginning of the later-held hearing on the specification and sentencing that petitioner "will not elect to be tried by the court" on the specification and instead wanted "the jury to make this determination." (*Id.,* Attachment 4, Tr. 438). The court refused defense counsel's request as follows:

> As you know, or I'll put on the record at this point, prior to trial I brought up in chambers the subject of the specification with counsel. It was a concern of mine. I brought it up, I asked everybody, what are we going to do about it. I asked counsel specifically, how do you want to handle the specification.
>
> For the record, I recall being told by counsel, defense counsel, that the jury would not hear the specification. Based on that conversation, it was my understanding, my understanding alone, that I would make the determination on the specification.
>
> There was never a request that I had heard or can recall, that the jury would make the specification. As a matter of fact, again I reiterate, I was told that the jury would not hear the specification. In no way was it ever indicated to me that the defendant wanted the jury to determine the specification.
>
> As a result of this conversation with counsel, I did not in any way inform the jury that it would be called upon in any way to deliberate in a second hearing. Unequivocally, I would have told the jury that.
>
> I don't think it's fair to put them in the box, try this case not knowing that there would be another aspect to this. . . . I didn't do that because it was my understanding that it was to be tried to me. I made no attempt whatsoever to talk to counsel about any type of jury instruction, which I think would have been the obvious right thing to do. That wasn't done because it was my understanding he elected that he did not want the specification to go to the jury.
>
> I made no mention, the record will reflect and back me up I believe, to the jury at any time, that they would be involved in trying a specification. *Until counsel was notified that the jury had reached a verdict, at that time prior to them being brought in, was the first time I was told that the defendant may want the jury to determine the specification. This was 3:50 or thereabouts*

on Friday, December 4th, at the conclusion of the trial.

> I determined, and I stand by my determination, it was not fair to that jury to tell them at that point, well now, ladies and gentlemen, you're going to go back and you're going to wait until we come up with jury instructions, and we're going to have you sit here and go through another hearing to determine whether or not the specification is a valid specification.

> In my opinion it was not right, it was not the appropriate thing to do. Therefore, I didn't do that.

> In conclusion, I'm ruling that the defendant did, in fact, elect to have the specification tried to the Court and not the jury. I feel the defendant's rights have not been violated, and to rule otherwise would certainly abrogate the State's right to sentence on the specification.

(Doc. 18, Attachment 4, Tr. 441-42) (emphasis added). In response, while expressing his agreement with "the factual scenario the Court read into the record," defense counsel reiterated that there had been "an honest misunderstanding" between them because he had meant by his representations in the pre-trial conference only "that the specification should not be tried as part of the State's case in chief with the indictment itself." (*Id.,* Tr. 443).

On appeal to the Ohio Court of Appeals, petitioner argued the trial court's ruling deprived him of his right to a jury trial on the specification in the absence of any evidence in the record indicating that petitioner "knowingly, intelligently and voluntarily" waived such right. (Doc. 17, Ex. F, p. 28). Petitioner pointed out that the trial court had not engaged in any colloquy with petitioner to determine whether he wished to waive his jury trial right; there was "no written waiver of a right to a jury trial signed or acknowledged by" petitioner; and the "only evidence of waiver consist[ed] of confusing exchanges between the court and [defense] counsel." (*Id.,* pp. 28-29).

The Ohio Court of Appeals was the only state court to issue a reasoned opinion addressing petitioner's claim of error on the merits. Without citing or otherwise considering any federal constitutional standards or principles, the state appellate court first determined that the "success" of petitioner's claim turned "entirely . . . upon whether the election [to have the sexually violent predator specification tried to the court] under R.C. 2971.02 must be in writing and of record." (*Id.,* Ex. H, p. 29). Relying on an unreported decision from the Eighth District Ohio Appeals Court, *State v. Oldham,* No. 73644, 1999

WL 304314 (Ohio Ct. App. May 13, 1999) (unpublished), which in turn had relied on the Ohio Supreme Court's decision in *State v. Nagel*, 703 N.E.2d 773 (1999), involving a bench trial on a prior conviction specification, the court concluded that the election under Ohio Rev. Code § 2971.02 "does not require a signed written jury waiver filed as part of the record." (*Id.*, pp. 29-31).

Upon concluding that a signed written jury waiver was not necessary in this case, the Ohio Court of Appeals next upheld the "trial court's finding that [petitioner] had elected to have the specification tried to the bench." (*Id.*, p. 31). In so holding, the court reasoned:

> . . . .[W]e note that the finding was based upon discussions off the record. We cannot say, therefore, that the finding was erroneous. Nor can we determine whether any off-the-record request to rescind the election was made before the jury was discharged. Although Napier insists that it was, the trial court stated that it could not recall any such request being made.

(*Id.*). Finally, the court concluded that "assuming . . . an election was earlier made, and that the request to rescind the election did not occur until after the jury was discharged, we cannot say that it was an abuse of discretion for the trial court to refuse to bring the jury back." (*Id.*).

Neither *Nagel* nor *Oldham*, relied on by the Ohio Court of Appeals in this case, involved direct consideration of the Sixth Amendment jury trial right and what constitutes a valid waiver thereof, but rather turned on state statutory construction. In *Nagel*, defense counsel stated in a transcribed in-chambers conference, which was held after the jury was empaneled, but before the presentation of evidence, that his client "desire[d] to have the [prior conviction] specifications tried to the Court rather than to the jury." *Nagel*, 703 N.E.2d at 774. Apparently, the trial court honored defense counsel's request, but did not require the defendant to execute a written form waiving his right to a jury trial on the specifications. *Id.* at 775. After his conviction by the jury on the charged substantive offenses and conviction by the court on the specifications and sentencing, the defendant raised for the first time as an assignment of error on appeal that the trial court lacked jurisdiction to try the specifications because the election made by defense counsel was ineffective under Ohio Rev. Code § 2945.05, which provides that a jury trial waiver in all pending criminal cases "shall be in writing, signed by the defendant, and filed . . . and made a part of the record." *Id.* at 776. Apparently, the Ohio Court of Appeals agreed with this contention. *See id.* However, the Ohio Supreme Court reversed the Court of Appeals'

ruling, holding that the general state statutory requirements for waiving a jury trial contained in Ohio Rev. Code § 2945.05 do not apply to jury waiver requests made by a defendant pursuant to the more specifically applicable state statutory provisions allowing the defendant to "request that the trial judge, in a case tried by a jury, determine the existence of [a prior conviction] specification at the sentencing hearing." *Id.* at 777.

Without acknowledging any underlying federal constitutional concerns, or otherwise directly addressing whether or not the defendant had a federal constitutional right to a jury trial on the specification under the more specifically applicable specification "election of tribunal" statute, the state supreme court focused its discussion on the distinction between the two state statutory jury waiver provisions. Specifically, the court reasoned in relevant part:

> R.C. 2945.05, by its very terms, applies to pending "criminal cases." Therefore, the question whether R.C. 2945.05 applies to requests by a defendant pursuant to former 2941.142 or 2941.143 [governing the election of tribunal for prior conviction specifications] to try prior-conviction specifications to the trial judge, and not to the jury, is entirely dependent on the meaning of the phrase "criminal cases." Our understanding of the phrase is that it encompasses the underlying charge or charges in the criminal action against the accused but does not necessarily encompass the specification or specifications attached thereto. The reason, of course, is that a specification is, by its very nature, ancillary to, and completely dependent upon, the existence of the underlying criminal charge or charges to which the specfication is attached. Therefore, we have difficulty understanding precisely how it is that R.C. 2945.05 could be found to apply in circumstances where, as here, a defendant has received a jury trial on the merits of the underlying charges alleged in the indictment.

> The conclusion that R.C. 2945.05 does not apply in the context of the present appeal becomes even more obvious when we look to the provisions of former R.C. 2941.142 and 2941.143. Those statutes affirmatively answer the question of what constitutes a criminal "case" in the context of the case at bar. R.C. 2941.142 and 2941.143 stated that "the defendant may request that the trial judge, in a *case* tried by a jury, determine the existence of the specification at the sentencing hearing." (Emphasis added). The use of the word "case" in these former statutes lends meaning to the word "cases" in R.C. 2945.05. Obviously, the "case" to which these former R.C. 2941.142 and 2941.143 refer is composed solely of the underlying charges against the

defendant, and does not include a specification that the defendant has requested the trial judge to determine. . . .

*Id.* at 777-78.

The state supreme court further reasoned that because Ohio Rev. Code § 2945.05 "had no applicability to [the defendant's] request to have the trial judge determine the existence of the prior-conviction specifications, and the criminal case . . . was, in fact, tried by jury," its earlier decision in *State v. Pless,* 658 N.E.2d 766 (1996), mandating "strict compliance with the requirements of R.C. 2945.05," did not support the state court of appeals' holding as the defendant had argued. *Id.* at 778. In a concurring opinion, Justice Cook further addressed concerns raised by the *Pless* decision as follows:

> Though I continue to believe that this court's decision in . . . *Pless* . . . is incorrect and that the requirements in R.C. 2945.05 are directory rather than mandatory, . . . *Pless* is inapposite to the separate trial of these specifications. This court decided *Pless* on statutory construction, not constitutional grounds. The majority of the *Pless* court simply reasoned that the words selected by the General Assembly in R.C. 2945.05 were to be enforced as written. Though the court of appeals here seemed to read it otherwise, *Pless* is a narrow opinion; it does not hold that every nonjury determination of guilt must meet the R.C. 2945.05 requirements.
>
> By the same token, then, no contradiction results from applying a strict statutory construction to inform our decision as to bifurcation of the trial of these specifications. The words of former R.C. 2941.142 and 2941.143 permit bifurcation upon the "request" of a defendant. There is no reason in either the language or the purpose of the statutes to reach out for an overlay from R.C. 2945.05.
>
> Moreover, these statutes have very different purposes and do not intersect or conflict. The patent motivation of the General Assembly in enacting R.C. 2945.05 was to ensure that a defendant's waiver of his constitutional right to trial by jury was express and recorded. By contrast, the intent of the General Assembly in former R.C. 2941.142 and 2941.143 was to *shield* a defendant from a prejudiced jury by allowing evidence of a prior conviction to be withheld from the jury. . . .

21

*Id.* at 779 (Cook, J., concurring) (emphasis in original).

As in this case, *Oldham* involved the "election of tribunal" provision set forth in Ohio Rev. Code § 2971.02 for sexually violent predator specifications. Unlike this case, the defendant in *Oldham,* through his attorney, had stated in a transcribed court proceeding that he wanted the court to determine the specification. *Oldham, supra,* 1999 WL 304314, at *3. The defendant, who did not contest that he elected to have the court try the specification, argued on appeal only that as a state statutory matter the court lacked jurisdiction to decide the specification in the absence of a written jury waiver signed by the defendant and filed as part of the record in accordance with Ohio Rev. Code § 2945.05. *Id.* at *2-3. The state appellate court overruled this claim of error, holding the Ohio Supreme Court's ruling in *Nagel* that "the provisions of R.C. 2945.05 do not apply to requests made by a defendant to have the trial judge determine specifications" was "controlling in this case" over *Pless.* The court also concluded that the trial court had complied with Ohio Rev. Code § 2971.02, "which applies specifically to sexually violent predator specifications." *Id.* at *3. In so ruling, the court rejected the defendant's contention that the prior conviction specification addressed in *Nagel* is distinguishable from a sexually violent predator specification because the latter specification "requires more proof and more depth than the ordinary specification case." *Id.* at *4. Relying on Justice Cook's concurring opinion in *Nagel,* the court reasoned:

> We, of course, are driven by the language of R.C. 2971.02. It mirrors the statutory language in the specification statutes of *Nagel.* The goal of both R.C. 2971.02 and the *Nagel* statutes are to guarantee that a defendant is not prejudiced by prior conviction data. . . . We conclude that the intent of R.C. 2971.02 is the same as other specification statutes. Accordingly, the rationale of *Nagel* is applicable to this case.

*Id.*

Generally, under the standard of review set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal habeas petitioner is not entitled to relief unless the state courts' adjudication of his claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on

22

this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998). A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942.

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.). Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942. The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

When the state courts fail to address the constitutional issues raised, however, the federal habeas court conducts a de novo review instead of applying the AEDPA standard of review set forth in § 2254(d). *Maples v. Stegall,* 340 F.3d 433, 436-37 (6th Cir. 2003) (relying on the Supreme Court's recent decision in *Wiggins v. Smith,* 123 S.Ct. 2527 (2003), wherein the Court conducted a de novo review of the portion of petitioner's claim not considered by the state courts, without applying the AEDPA's standard of reasonableness or giving any deference to the state courts); *see also Davis v. Secretary for Dep't of Corrections,* 341 F.3d 1310, 1312 (11th Cir. 2003). *Cf. Wynne v. Renico*, 279 F.Supp.2d 866, 879 (E.D. Mich. 2003) (while acknowledging that *Maples* and *Wiggins* call for a de novo review and not the more deferential AEDPA review, the district court considered a constitutional claim, which the state court had not directly addressed, under

the more-stringent-for-petitioner AEDPA standard in light of its ultimate holding that petitioner was entitled to habeas relief based on that claim).  In this case, the state courts did not directly address the constitutional claim asserted by petitioner in challenging the trial court's refusal to allow a jury trial on the sexually violent predator specification.  Instead, their adjudication of petitioner's claim turned on state statutory construction. (*See* Doc. 17, Ex. H, pp. 29-31).  Therefore, the constitutional question presented in Ground One is subject to de novo review by this Court.

The Sixth Amendment provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury of the State and district wherein the crime shall have been committed. . . ."  U.S. Constit. amend. VI.  It is well-settled that the Sixth Amendment right to a jury trial in "serious" criminal cases is considered "fundamental to the American scheme of justice" and thus applicable to the states as a due process requirement guaranteed by the Fourteenth Amendment.  *See Duncan v. Louisiana,* 391 U.S. 145, 148-49, 158 (1968).  The purpose of the jury trial is to guard against governmental oppression and arbitrary law enforcement.  *Brown v. Louisiana,* 447 U.S. 323, 330 (1980); *Duncan,* 391 U.S. at 156 & n.23.  As the history of the jury's development demonstrates, it was believed that "providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge." *Williams v. Florida,* 399 U.S. 78, 100 (1970) (quoting *Duncan,* 391 U.S. at 156).  In *Duncan,* the Supreme Court explained:

> . . . .[T]he jury trial provisions . . . reflect a fundamental decision about the exercise of official power–a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges.  Fear of unchecked power, so typical of our State and Federal Governments in other respects, found expression in the criminal law in this insistence upon community participation in the determination of guilt or innocence.

*Duncan,* 391 U.S. at 156.  "Given this purpose, the essential feature of a jury obviously lies in the interposition between the accused and the accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group's determination of guilt or innocence." *Williams,* 399 U.S. at 100.  It is this "safeguarding function" which "is the fundamental of jury trial that brings it within the mandate of due process." *Johnson v. Louisiana,* 406 U.S. 366, 373-74 (1972).

Trial by jury in criminal cases is not jurisdictional, but is a right conferred on the accused that may be waived. *Patton v. United States,* 281 U.S. 276, 298 (1930). Given not only that "the right . . . to a trial by a constitutional jury [must] be jealously preserved, but [also that] the maintenance of the jury as a fact-finding body in criminal cases is of such importance and has such a place in our traditions," the right may be waived only with the government's consent, the court's sanction, and the defendant's "voluntary, knowing and intelligent" consent. *Patton*, 281 U.S. at 312; *Adams v. United States ex rel. McCann,* 317 U.S. 269, 278-79 (1942); *see also United States v. Martin,* 704 F.2d 267, 271-73 (6th Cir. 1983). In *Martin,* a federal criminal case, the Sixth Circuit also held that a jury trial waiver must be in writing as required by Fed. R. Crim. P. 23(a). *Martin,* 704 F.2d at 271. However, this writing requirement, "designed to impress the defendant with the gravity of the right relinquished and provide the best evidence of the defendant's voluntary consent," *id.,* "does not establish a constitutional minimum." *Brown v. Burns,* 996 F.2d 219, 221 (9th Cir. 1993) (per curiam). Where "the record clearly reflects that defendant personally gave express consent in open court, intelligently and knowingly," to a non-jury trial, a voluntary, knowing and intelligent waiver may be found despite the defendant's failure to comply with any writing requirement set forth in federal or state criminal rules or statutes. *United States v. Wagner,* 12 Fed.Appx. 219, 221 (6th Cir. Apr. 11, 2001) (per curiam) (not published in Federal Reporter) (and cases cited, distinguished and quoted therein, including *United States v. Saadya,* 750 F.2d 1419 (9th Cir. 1985), *United States v. Page,* 661 F.2d 1080 (5th Cir. 1981) ("where no written waiver was ever filed"), *cert. denied,* 455 U.S. 1018 (1982), and *United States v. DeMichael,* 692 F.2d 1059, 1061 (7th Cir. 1982), *cert. denied,* 461 U.S. 907 (1983)); *see also United States v. Robinson,* 8 F.3d 418, 422 (7th Cir. 1993); *Brown,* 996 F.2d at 221.

"[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." *Adams,* 317 U.S. at 278. In *Adams,* the Supreme Court held that a defendant may knowingly, intelligently and voluntarily waive his right to a jury trial even if he is not represented by counsel. *Id.* at 278-80. Conversely, an attorney cannot waive the jury trial right without the consent or approval of his client, because such right is considered "personal to a defendant and one which he alone may waive." *United States ex rel. Williams v. DeRobertis,* 715 F.2d 1174, 1182 (7th Cir. 1983), *cert. denied,* 464 U.S. 1072 (1984); *see also Taylor v. Illinois*, 484 U.S. 400, 417-18 & n.24 (1988)*; United States v. Taylor,* 498 F.2d 390, 392 (6th Cir. 1974); *Miller v. Dormire,* 310 F.3d 600, 603 (8th Cir. 2002) ("the defendant has the ultimate authority to make fundamental decisions regarding his case, such as whether to waive a jury") (citing *Jones v. Barnes,* 463 U.S. 745, 751 (1983)); *United States v. Joshi,* 896 F.2d 1303, 1307-08 (11th Cir.) (distinguishing motion to

bifurcate co-defendants' trials, which is "more akin to a tactical decision with constitutional implications" that may be made by defense attorneys without the defendant's personal consent, from waiver of jury trial right, which involves an "inherent personal right of fundamental importance"), *cert. denied,* 498 U.S. 986 (1990); *Jones v. Hennessey,* No. C 95-4021 FMS, 1995 WL 779107, at *3 (N.D. Cal. Dec. 22, 1995) (unpublished);  *cf. United States v. Stewart,* 700 F.2d 702, 704-05 (11th Cir. 1983) (in holding that defense counsels' waiver of 12-person jury for jury of 13 fell into the category of "tactical decisions" that did not require the defendants' personal consent, the court quoted the following cautionary statement from a footnote in *United States v. Spiegel,* 604 F.2d 961, 965 n.9 (5th Cir. 1979), *cert. denied,* 446 U.S. 935 (1980): "This in no way suggests that counsel may waive the right to a *jury trial* for their clients.") (emphasis in original).

The trial court's duty in deciding whether or not to approve a jury trial waiver "is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from [the normal and preferable] mode of trial [by jury] . . ., and with a caution increasing as the offenses dealt with increase in gravity." *Patton,* 281 U.S. at 312.  Moreover, waiver of the jury trial right may not be presumed from a "silent record." *Boykin v. Alabama,* 395 U.S. 238, 242-43 (1969) (involving guilty plea waiver of "important" constitutional rights, including right to jury trial); *see also Wagner,* 12 Fed.Appx. at 220 (citing *United States v. Lee,* 539 F.2d 606, 609 (6th Cir. 1976)).  However, by the same token, in a federal habeas corpus proceeding such as this challenging a state conviction, the burden of proof is on petitioner to establish that he did not competently and intelligently waive his constitutional rights. *Daniels v. Tate,* 865 F.2d 1267 (table), No. 87-4149, 1989 WL 2207, at **5 (6th Cir. Jan. 17, 1989) (unpublished) (per curiam) (citing *Johnson v. Zerbst,* 304 U.S. 458, 468-69 (1938)), *cert. denied,* 493 U.S. 826 (1989).

The first question that must be resolved is whether petitioner's Sixth Amendment jury trial right was even implicated by the trial court's refusal to allow a jury trial on the sexually violent predator specification.  As discussed above in addressing Ground Four of the petition, *see supra* pp. 11-12, the Supreme Court held in *Apprendi* that a criminal defendant has the constitutional right under the Sixth Amendment to a jury determination with respect to "any fact [other than the fact of a prior conviction] that increases the penalty for a crime beyond the prescribed statutory maximum." *Apprendi,* 530 U.S. at 490.  This case falls squarely within *Apprendi*'s holding.  Petitioner was sentenced to the maximum prison term of ten (10) years for the underlying rape offense, which is a first degree felony in Ohio. *See* Ohio Rev. Code §§ 2907.02(B) and 2929.14(A)(1).  Petitioner

was further sentenced to five additional years in prison upon the trial court's determination with respect to the sentence enhancement specification attached to the rape count that petitioner was a "sexually violent predator," or in other words, a "person who has been convicted of or pleaded guilty to committing, on or after the effective date of [the specification statute], a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." *See* Ohio Rev. Code § 2971.01(H)(1). For purposes of determining petitioner's likelihood of engaging in the future in one or more sexually violent offenses, the court was permitted to consider not only whether or not petitioner had two or more prior convictions for sexually oriented offenses, but also "other relevant evidence," such as a "documented history from childhood" of "sexually deviant behavior," evidence suggesting the chronic commission of offenses with a sexual motivation, and the prior commission of offenses wherein the victim was "tortured" or "physically harmed" to the degree that her life was "in jeopardy." *See* Ohio Rev. Code § 2971.01(H)(2). Moreover, upon a finding of guilt on the specification, the court was required to impose an additional sentence ranging from a minimum of two years to a life term of imprisonment. *See* Ohio Rev. Code § 2971.03(A)(3).

In this case, the additional five-year sentence imposed consecutively for the specification exceeded the prescribed ten-year statutory maximum sentence for the underlying rape offense. Furthermore, the determination of guilt on the specification was based on additional factual considerations and findings, not before the jury in determining petitioner's guilt on the rape charge, regarding petitioner's likelihood to commit sexually violent offenses in the future. Therefore, under *Apprendi,* petitioner had the Sixth Amendment right to a jury trial on the specification, which could only be waived with his "voluntary, knowing and intelligent," as well as personal, consent. There is no indication in the record that petitioner ever personally consented to any waiver of a jury trial on the specification. Indeed, the trial transcript reflects that on the two occasions the jury waiver issue was discussed on the record, both at the close of trial and at the beginning of the hearing on the specification and sentencing, defense counsel indicated that it was his client's desire to not have the jury discharged after the trial on the underlying charges, but rather to have the remaining sexually violent predator specification tried to the jury. (*See* Doc. 18, Attachment 3, Tr. 431; Attachment 4, Tr. 438).[5]

_____

[5]On direct appeal, the Ohio Court of Appeals found as a fact that defense counsel did not make any request for a jury trial on the specification until after the jury was discharged at the conclusion of trial on the underlying substantive criminal counts. (*See* Doc. 17, Ex. H, p. 31). 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue

Apparently, an off-the-record conference was held in chambers with counsel prior to trial on the underlying charges, wherein certain statements were made by defense counsel which the court interpreted as waiving a jury trial on the specification. (*See id.*, Attachment 3, Tr. 430-32; Attachment 4, Tr. 441-42). The court acknowledged that in this unrecorded conversation, defense counsel "did not specifically say that I would determine it, but it was my understanding that the jury would not." (*Id.,* Attachment 3, Tr. 432). Defense counsel had a different interpretation of the matter, which he claimed to be "an honest misunderstanding" between him and the trial judge. (*Id.,* Attachment 4, Tr. 443). Defense counsel contended that he only meant by his statements that the specification would not be heard by the jury as part of the State's case-in-chief and would only become an issue for determination by the jury, or court upon petitioner's waiver of the jury trial right, if the jury found petitioner guilty after trial on the underlying rape charge. (*Id.,* Attachment 3, Tr. 431; Attachment 4, Tr. 443). Both the trial judge's and counsel's statements about what transpired in the unrecorded conversation indicate to this Court that the colloquy between them was insufficient to establish a knowing and voluntary waiver of the Sixth Amendment jury trial right. In any event, it appears from the record that petitioner was not present at this chambers' conference and the judge's "understanding" of waiver was derived solely from statements made to him by counsel. There is no evidence in the record even remotely suggesting that counsel's purported waiver of a jury trial on the specification was made with petitioner's personal consent or approval. *Cf. Robinson,* 8 F.3d at 423 (in chambers' conversation between judge and defense counsel implying that defendant had agreed to have the judge resolve all forfeiture issues did "not provide sufficient indicia of a knowing and voluntary waiver" of jury trial right with respect to forfeiture in the absence of any "indication in the record that [defendant] was consulted and made the decision"). Therefore, this Court concludes that under *Apprendi*, petitioner had a right guaranteed by the Sixth Amendment to a jury trial on the sexually violent predator specification, which was violated when the trial court refused defense counsel's request for a jury trial on the specification without first obtaining and ensuring petitioner's personal, knowing and voluntary waiver of his jury trial right.

---

made by a State court shall be presumed to be correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Here, the trial record clearly and convincingly demonstrates the state appellate court's finding is erroneous. Although nothing was placed on the record about the jury waiver issue until after the jury was discharged at the close of trial on the substantive offenses, it is clear from the colloquy between the trial judge and defense counsel at that time that defense counsel informed the judge *before* the jury came into the court to announce its verdict that "the defendant may want the jury to determine the specification." (Doc. 18, Attachment 3, Tr. 430-31; Attachment 4, Tr. 441-42).

However, the inquiry does not end here. As discussed above in addressing Ground Four, *see supra* pp. 11-13, *Apprendi* was decided in June 2000, long after petitioner's trial and direct appeal proceedings had concluded in the state courts. Although the Supreme Court has not decided the issue at hand as to whether *Apprendi* may be applied retroactively in a collateral proceeding such as this, the vast majority of courts, including the Sixth Circuit, have held *Apprendi* announced a "new" constitutional rule that may not apply retroactively on collateral review of cases decided prior to it. *See, e.g., Goode,* 305 F.3d at 382-85; *Regalado,* 334 F.3d at 526-27; *Reynolds,* 290 F.3d at 1030 (involving § 2254 habeas petition); *Green, supra,* 2002 WL 1587133, at *20 n.38; *cf. Harris,* 536 U.S. at 581 (Thomas, J., dissenting). Accordingly, despite the *Apprendi* violation in this case, petitioner is not entitled to habeas corpus relief under that theory. He, therefore, may be able to obtain relief only if he can establish either (1) he had a Sixth Amendment right to a jury trial, separate from the right recognized in *Apprendi* and applicable at the time of his trial based on the state specification statute allowing for the election of trial by the court, which was violated in the absence of his personal, knowing and voluntary waiver of such right; or (2) he had a state-based right to a jury trial on the specification, the denial of which without his personal consent rose to the level of a due process violation. *Cf. Davis v. Champion,* 21 F.3d 1121 (table), No. 93-5170, 1994 WL 149109, at ** 2 (10th Cir. Apr. 26, 1994) (unpublished) (in analyzing petitioner's claim in § 2254 proceeding that he was denied his right to a jury trial when he did not personally waive his right to a 12-person jury, the circuit court first considered whether petitioner had a federal Sixth Amendment right to a 12-person jury and on concluding that he did not, next considered whether "any irregularity" in his waiver of his right to a 12-person jury under the state Constitution "reach[ed] constitutional dimension"), *cert. denied,* 513 U.S. 894 (1994).

The Court, upon extensive review of the case-law, can ascertain no authority separate from *Apprendi,* and applicable at the time of petitioner's trial in 1998, for holding petitioner had a Sixth Amendment right to a jury trial on the sexually violent predator specification, which was considered for sentence enhancement purposes only and not to elevate the degree of the underlying felony sex offense previously determined by the jury. Indeed, it appears that at that time there was precedent supporting the opposite conclusion–i.e., that petitioner did not possess any federal constitutional right to a jury determination as to the appropriate sentence to be imposed. *See Libretti v. United States,* 516 U.S. 29, 49 (1995) (holding that although the defendant had the statutory right under Fed. R. Crim. P. 31(e) to a jury determination of forfeitability of his property in a federal criminal case, the Court's "analysis of the nature of criminal forfeiture as an aspect of sentencing compel[led] the conclusion the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection"); *see also McMillan,* 477

U.S. at 93 (stating "there is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of facts," and distinguishing "sentencing factors" that may be considered by the sentencing court in determining the appropriate sentence to be imposed from "elements" of an offense that must be proved beyond a reasonable doubt at a jury trial); *Cabana v. Bullock,* 474 U.S. 376, 385 (1986) ("The decision whether a particular punishment . . . is appropriate in any given case is not one that we have ever required to be made by a jury."); *Spaziano v. Florida,* 468 U.S. 447, 459 (1984) (holding there is no right to a jury determination regarding the imposition of the death penalty).

Particularly noteworthy, only a few months before petitioner's trial, the Supreme Court issued a decision in March 1998 in *Almendarez-Torres v. United States,* 523 U.S. 224 (1998), "stand[ing] for the proposition that not every fact expanding a penalty range must be stated in a felony indictment, the precise holding being that recidivism increasing the maximum penalty need not be so charged." *Jones v. United States*, 526 U.S. 227, 248 (1999). Although the case concerned the constitutional rights to an indictment and notice and not the Sixth Amendment right to a jury trial, as the Court pointed out in *Jones,* 526 U.S. at 249, the holding in *Almendarez-Torres* "rested in substantial part on the tradition regarding recidivism as a sentencing factor, not as an element to be set out in the indictment." Distinguishing *Almendarez-Torres* on the basis of the Court's "repeated emphasis [in that case] on the distinctive significance of recidivism" as a traditional sentencing factor within the trial court's discretion to determine, the Court concluded in *Jones* that *Almendarez-Torres* did not "resolve the due process and Sixth Amendment questions" before it as to whether the federal carjacking statute's provision for higher penalties when the offense results in serious bodily injury or death set forth additional elements of the offense and not mere sentencing considerations. *Jones,* 526 U.S. at 249. Unlike *Jones,* this case is similar to *Almendarez-Torres* to the extent that recidivism concerns undergird the sexually violent predator specification's enhanced penalties for those sex offenders found "likely to engage in the future in one or more sexually violent offenses." *See* Ohio Rev. Code § 2907.01(H)(1); *see generally* Jack A. Guttenberg, *Recent Changes in Ohio Sentencing Law: The Questions Left Unanswered,* 15 U. Tol. L. Rev. 35, 35-38 (1983) (creation of analogous enhanced sentencing specifications in Ohio was "primarily designed to deter and incapacitate violent, potentially violent and serious repeat offenders"). Therefore, certainly at the time of petitioner's trial in 1998, *Almendarez-Torres* provided strong support for finding no Sixth Amendment right to a jury trial attached to the sexually violent predator specification determination under Ohio Rev. Code § 2971.02.

Accordingly, the Court concludes that at the time of his trial and conviction,

petitioner had no recognized right under the Sixth Amendment to a jury trial on the sexually violent predator specification.[6] Therefore, the only arguable theory for relief left for petitioner to pursue is that he had a state-created, as opposed to federal constitutional, right to a jury trial on the specification, which was denied in violation of his Fourteenth Amendment right to due process.

Although Ohio Rev. Code § 2971.02 does not expressly grant the accused the right to have the sexually violent predator specification tried by a jury, the statute "clearly impl[ies] such a right [by granting] the defendant the option of litigating [the] specification[] in a separate sentencing hearing before the trial judge when the underlying charge is presented to the jury." Jack A. Guttenberg, *Recent Changes in Ohio Sentencing Law: The Questions Left Unanswered,* 15 U. Tol. L. Rev. 35, 49 (1983). As Guttenberg reasoned in finding an implied right to a jury trial with respect to other analogous sentencing specifications in effect in Ohio, "[t]he only reasonable interpretation flowing from this option is that normally these specifications will be presented to the jury." *Id.* It, therefore, appears that petitioner had a right under state law to a jury trial on the specification. Indeed, the state courts have implicitly acknowledged, without questioning, that such a right exists when summarily stating in numerous appellate decisions that a defendant "waived his right to a jury trial" on violent sexual predator specifications charged against him. *See, e.g., State v. Myers,* 795 N.E.2d 77, 82 (Ohio Ct. App.), *appeal dismissed,* 800 N.E.2d 48 (2003); *State v. Searles,* No. 02 CA 4, 2003 WL 21508508, at *1 (Ohio Ct. App. June 27, 2003) (unpublished), *appeal dismissed,* 798 N.E.2d 406 (Ohio 2003); *State v. Coombs,* No. 02CA007979, 2002 WL 31313006, at *2 (Ohio Ct. App. Oct. 16, 2002) (unpublished); *State v. McHenry,* No. 2001CA00062, 2001 WL 1265598, at *1 (Ohio Ct. App. Oct. 15, 2001) (unpublished); *cf. State v. Fittro,* 607 N.E.2d 447, 450

---

[6]Because *Apprendi* does not apply to this collateral proceeding and because petitioner is unable to demonstrate based on other authority that he had a Sixth Amendment right to a jury trial on the specification at the time of his trial and sentencing, this Court need not address whether the *Apprendi*-type constitutional violation involved here is subject to harmless error analysis. *Compare Miller,* 310 F.3d at 603 ("When a defendant's [Sixth Amendment] right to a jury trial is denied as a result of his attorney's deficient performance, this circuit has determined that on the basis of Supreme Court precedent, *Strickland* prejudice is presumed because such misconduct is tantamount to a structural error," which is "'not amenable to harmless error analysis, but require[s] automatic reversal.'") (citing and quoting *McGurk v. Stenberg,* 163 F.3d 470, 474-75 (8th Cir. 1998)) *with United States v. Vazquez,* 271 F.3d 93, 103 (3rd Cir. 2001) (contrary to Circuit Judge Sloviter's dissenting opinion, *see Vazquez,* 271 F.3d at 122-26, the majority holds that an *Apprendi* violation is not a structural defect and thus is subject to harmless error or plain error analysis), *cert. denied,* 536 U.S. 963 (2002).

(Ohio 1993) (Wright, J., dissenting) (pointing out that in providing the defendant with the right to request a bifurcated hearing on a prior conviction specification, the Ohio legislature had given the defendant the right to choose whether the specification would be proven to a jury or a judge).

The scope of federal habeas review of the alleged violation of the state statutory jury trial right is narrow.  It is well-settled that a federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 68 (1991). "For the denial of a state-based [jury trial] right to support the issuance of a writ of habeas corpus the petitioner must show that the denial was arbitrary, unprincipled, unreasonable and with 'so little basis in law and fact as to constitute a denial of due process.'" *Davis, supra,* 1994 WL 149109, at **2 (quoting *United States ex rel. Burnett v. Illinois,* 619 F.2d 668, 670 (7th Cir.), *cert. denied,* 449 U.S. 880 (1980)); *see also Smith v. Zimmerman,* 768 F.2d 69 (3rd Cir. 1985); *cf. Donnelly v. DeChristoforo,* 416 U.S. 637, 642-43 (1974) (in case involving allegations of prosecutorial misconduct in a state criminal trial, the Supreme Court held that where no specific constitutional right is alleged to have been infringed by the prosecutor's conduct, such claim is one of ordinary trial error, which does not rise to the level of a constitutional violation unless the misconduct "so infected the trial with unfairness as to render the resulting conviction a denial of due process").

Here, the question is close whether the alleged denial of petitioner's state right to a jury trial on the specification rose to the level of a due process violation.  On the one hand, the trial court based its "understanding" of petitioner's waiver of his state jury trial right on an off-the-record conversation with defense counsel in chambers, which as discussed above, *see supra* pp. 28-29, was insufficient to establish a "knowing, voluntary and intelligent," or personal, waiver of such right under federal constitutional standards. The desirable course, which the trial judge should have followed to avoid the "misunderstanding" that apparently resulted from his conversation with defense counsel, would have been to obtain a clear, express and specific waiver of the jury trial right upon a more thorough and formal inquiry, preferably in proceedings held in open court in petitioner's presence.  Nevertheless, it appears that under state law standards governing the state-based right, the trial judge could properly rely on an oral waiver of the jury trial right made by defense counsel in chambers without the defendant's personal approval. *See, e.g., State v. Kidd,* No. 47510, 1986 WL 5023, at *5 (Ohio Ct. App. Apr. 24, 1986) (unpublished) (in a case challenging the trial court's denial of a jury waiver request, the state appellate court held that in the absence of a statutory provision setting forth a procedure to follow to perfect the right to a bench trial on a prior conviction specification,

the waiver request made orally by defense counsel, rather than the defendant personally in writing or orally, "was properly made and should have been granted"); *State v. Hairston,* No. 85AP-25, 1985 WL 10154, at *1 (Ohio Ct. App. Sept. 10, 1985) (unpublished) (in finding a written waiver signed by defendant was not required to waive a jury trial on a prior conviction specification, the state appellate court stated: "We are not aware of any reason why the request or waiver cannot be made orally by defense counsel."); *cf. Nagel*, 703 N.E.2d at 774 (upholding the trial court's judgment in a bench trial on prior conviction specifications in a case where defense counsel orally waived the jury trial right in a transcribed in-chambers discussion between him, the trial judge and the prosecutor).[7]

Moreover, because the "waiver" occurred in an unrecorded conversation, this Court is unable to assess whether or not the trial court's alleged error in understanding defense counsel's representations was so arbitrary, unprincipled, unreasoned and with so little basis in fact as to rise to the level of a due process violation. Petitioner has not provided any additional evidence regarding the actual substance of the conversation which formed the basis for the trial court's "understanding" that the jury trial right had been waived; nor is it likely that any party would be able to recollect what was said at this point in time. Therefore, in the absence of "clear and convincing" evidence to the contrary, petitioner is unable to rebut the presumption of correctness to be accorded the trial court's ultimate factual finding, upheld on direct appeal, that petitioner had elected to proceed before the court on the sexually violent predator specification. *See* 28 U.S.C. § 2254(e)(1); *see also supra* p. 28 n.5.

---

[7]In two unpublished cases decided before *Nagel,* the Sixth and Tenth District Ohio Courts of Appeals took the position that jury trial waivers for prior conviction specifications must comply with the stringent jury waiver procedures set forth in Ohio Rev. Code § 2945.05 and Ohio R. Crim. P. 23(A) for serious substantive offenses. *See State v. Moss,* No. L-87-378, 1989 WL 10253, at *8 (Ohio Ct. App. Feb. 10, 1989) (unpublished), *appeal dismissed,* 546 N.E.2d 1331 (Ohio 1989); *State v. Barnett,* No. 85AP-265, 1985 WL 9676, at *2-3 (Ohio Ct. App. Sept. 26, 1985) (unpublished). In *Barnett, supra,* at *3, the court stated: "At the very least, the request pursuant to [the specification statute] that the court, rather than the jury, determine the prior-conviction issue should be made personally by the defendant in open court." This position was severely undercut, if not outright overruled, by the Ohio Supreme Court's decision in *Nagel,* 703 N.E.2d at 777-78, that the procedures set forth in Ohio Rev. Code § 2945.05, and specifically the requirement that the jury trial waiver be in writing and signed by the defendant himself, apply only to the underlying criminal charges and not to attached prior conviction sentence enhancement specifications. *See supra* pp. 19-22.

In any event, even assuming the trial judge erred as a matter of state law in finding defense counsel's representations amounted to a waiver of the state statutory jury trial right, due process was not violated by allowing the trial court to alternatively determine the issue as permitted by the state statute. It is well-settled that criminal defendants do not have any right under the Constitution to elect to have their cases tried before a court instead of a jury. *See Singer v. United States*, 380 U.S. 24, 25-26 (1965). The state statute granting the defendant the option of choosing which tribunal will hear the specification, therefore, gives more rights to the defendant than are accorded him under the Constitution. As Justice Cook pointed out in her concurring opinion in *Nagel* with respect to the analogous prior conviction specification, the provision granting the "election of tribunal" right was intended to protect the defendant from a prejudiced jury by allowing evidence necessary to establish the specification to be withheld from the jury. *Nagel,* 703 N.E.2d at 779; *see also Oldham, supra,* 1999 WL 304314, at *4 (applying same rationale to sexually violent predator specification). Therefore, the mere fact that the court, as opposed to the jury, heard the specification is insufficient to establish that the trial court's alleged error in understanding rose to the level of a constitutional violation.

In this case, although the trial judge indicated he had determined petitioner's guilt before evidence was heard on the specification (*see* Doc. 18, Attachment 4, Tr. 442-43), he realized his mistake in that regard and an evidentiary hearing was held. At the hearing, evidence was introduced showing petitioner had prior convictions in 1993 on two counts of gross sexual imposition stemming from one incident and, in a separate case, for domestic violence. The court's ultimate determination of "guilt" made after hearing the evidence and the parties' arguments was reasonably based on the evidence presented and did not reflect any predisposition or bias against petitioner. (*See id.,* Tr. 498-502). Indeed, when stating the reasons for its decision, the court did not adopt all of the State's contentions wholesale, but rather agreed with defense counsel's arguments that petitioner's prior convictions in 1993 for gross sexual imposition could not be used to prove the first prong of Ohio Rev. Code § 2971.01(H)(1)–i.e., that petitioner had committed a "sexually violent offense"–and could not be counted as two prior convictions for sexually oriented offenses within the meaning of § 2971.01(H)(2)(a) to establish petitioner's likelihood of engaging in sexually violent offenses in the future under the second prong of § 2971.01(H)(1). (*See id.,* Tr. 498-99). The court instead concluded that the rape conviction in the present case established petitioner's commission of a violent sexual offense under the first prong of § 2971.01(H)(1), and that the rape and gross sexual imposition convictions in the present case, in combination with the one prior conviction in 1993 for gross sexual imposition, established the two prior convictions for sexually oriented offenses under § 2971.01(H)(2)(a). (*Id.,* Tr. 498-500).

In weighing the remaining factors delineated in § 2971.01(H)(2) that were argued by the prosecutor, *see supra* p. 27, the court rejected the prosecutor's contention that petitioner was a person who chronically commits offenses with a sexual motivation; attached "some," but not a great deal of credence to evidence that petitioner choked the victim in the present case to the point where "she couldn't breath" for the purposes of establishing petitioner committed an offense in which the victim was physically harmed to the degree her life was in jeopardy; attached "some degree of significance" to petitioner's prior domestic violence conviction as "other relevant evidence;" and also considered as "other relevant evidence" the testimony heard in the instant matter relating to the young age of the victim, petitioner's "position of trust" as the live-in boyfriend of the victim's mother, petitioner's lack of remorse, and the choking incident. (*See* Doc. 18, Attachment 4, Tr. 500-01).

This Court is concerned that much of the evidence relied on by the trial judge in finding petitioner likely to commit sexually violent offenses in the future stemmed from the incident that gave rise to the underlying rape and gross sexual imposition charges. *Cf. State v. Myers,* No. 98-AP-1448, 1999 WL 771009, at *16 (Ohio Ct. App. Sept. 30, 1999) (unpublished) (evidence found insufficient to support "sexually violent predator" determination where the proof consisted solely of "the facts of the underlying crime and isolated statements defendant made that he thought of sex often and wanted to hurt people"); *State v. Harrod,* No. C-990018, 1999 WL 797980 (Ohio Ct. App. Oct. 8, 1999) (unpublished) (evidence found insufficient to support conviction on a sexually violent specification where the only evidence presented to show the defendant's likelihood to engage in sexually violent offenses in the future was the evidence introduced at trial in support of the underlying gross sexual imposition charge); *but cf. State v. Haynes,* No. 01AP-430, 2002 WL 1969636, at *15-16 (Ohio Ct. App. Aug. 27, 2002) (unpublished) (although the defendant had no prior history of conviction for sexually oriented offenses, the evidence of "harm inflicted on [the rape victim] culminating in her death," and of the defendant's lack of remorse, constituted sufficient evidence to support the defendant's conviction on the sexually violent predator specification), *appeal dismissed,* 780 N.E.2d 287 (Ohio 2002); *Oldham, supra,* 1999 WL 304314, at *5 (despite the State's concession that the defendant had not been convicted of two or more sexually oriented offenses and that there was neither a documented history from defendant's childhood nor evidence of defendant's chronic commission of sexually-motivated offenses, the evidence of violence displayed by the defendant in committing the underlying rape offenses constituted sufficient evidence to uphold the trial court's sexually violent predator determination). Although this Court is thus unable to go so far as to hold that no other conclusion but "guilt" could have been reached in this case, it nevertheless appears that there was a

sufficient factual basis, when considered together with petitioner's prior convictions in 1993 for gross sexual imposition and domestic violence, to support the state court's determination that petitioner was a sexually violent predator as charged in the specification.

Accordingly, in sum, it appears an *Apprendi*-type Sixth Amendment violation occurred when the trial court denied petitioner's request for a jury trial on the sexually violent specification and, based on its determination of guilt on the specification, sentenced petitioner to five additional years in prison to be served consecutively to the maximum sentence for the underlying rape offense. However, petitioner is not entitled to habeas relief under *Apprendi,* which was decided after petitioner's trial and direct appeal in the state courts, because *Apprendi* cannot be applied retroactively in this collateral review proceeding. At the time of his trial and conviction, petitioner had no recognized right under the Sixth Amendment to a jury trial on the sexually violent predator specification. To the extent he had a state-created right to a jury trial under Ohio Rev. Code § 2971.02, petitioner is not entitled to relief because he has not demonstrated he was denied due process as a result of any error by the trial court in refusing his request for a jury trial on the specification, which was first made at the close of trial on the underlying charges, based on its understanding  from a pretrial conference that petitioner had elected to proceed before the court on the specification matter. Therefore, petitioner is not entitled to federal habeas relief under Ground One of the petition.

### C.  Petitioner Is Not Entitled To Relief Based On The Double Jeopardy "Multiple Punishment" Claim Alleged In Ground Two

In Ground Two of the amended petition, petitioner contends his "right not to be compelled to be a witness against himself and his right to due process, both guaranteed by the Fifth and Fourteenth Amendments . . ., as well as traditional rules of lenity and assignment of burden of proof, were all violated" by the Ohio Court of Appeals in rejecting his claim on direct appeal that the trial court's failure to merge his sentences for rape and gross sexual imposition constituted a double jeopardy violation. (*See* Doc. 3, AMENDED PETITION ADDENDUM to Page 4). Although petitioner has phrased his claim in terms of a constitutional violation occurring at the state appellate level in the adjudication of an assignment of error raised by him on direct appeal, this Court's review is confined by 28 U.S.C. § 2254(d) to the determination whether or not the Ohio Court of Appeals' adjudication of petitioner's double jeopardy claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable

determination of the facts in light of the evidence presented in the state proceedings. *See supra* pp. 22-23.

In the assignment of error that resulted in the challenged ruling by the Ohio Court of Appeals, petitioner claimed the rape and gross sexual imposition counts charged against him should have been merged for the purposes of sentencing because they constituted "one uninterrupted assaultive episode without a separate animus." (Doc. 17, Ex. F, p. 20). Prior to sentencing, petitioner's counsel had asked the trial court to merge the two offenses on the ground that they were "necessarily part of the same act," as "[a]ny touching was preliminary to the act of intercourse." (Doc. 18, Attachment 4, Tr. 503-04). The trial court denied counsel's request, reasoning that because the rape involved a vaginal intercourse and the gross sexual imposition separately involved "the touching of the pubic region of the 14-year-old victim," there was a "separate animus as to each crime." (*Id.*, Tr. 504). Citing state case-law, petitioner argued on direct appeal that the trial court's failure to merge the offenses as "allied offenses of similar import" under Ohio Rev. Code § 2941.25, and resulting imposition of a consecutive one and one-half (1 ½) year sentence for the gross sexual imposition offense, violated his "right to be free from double jeopardy." (Doc. 17, Ex. F, pp. 20-21).

In overruling this assignment of error, the Ohio Court of Appeals engaged in a two-step analysis as provided under state law. The court first pointed out that it was permissible for Ohio's General Assembly to "prescribe cumulative punishments for certain offenses without violating Double Jeopardy" as long as the offenses contain separate statutory elements to be proved or, in other words, do not "correspond to such a degree that the commission of one crime will result in the commission of the other." (*Id.*, Ex. H, pp. 16-17) (quoting an unreported state appellate case). The court held that the rape and gross sexual imposition offenses charged against petitioner "correspond to such a degree that the commission of rape necessarily results in gross sexual imposition," because "using a purely textual analysis, . . . it would be impossible to engage in 'sexual conduct,'" an element of the rape offense, "without engaging in 'sexual contact,'" an element of the gross sexual imposition offense. (*Id.*, pp. 17-18). Therefore, as required by state law, the court turned to the second level of inquiry to determine whether, as a factual matter, "the two offenses were part of one uninterrupted episode . . . or whether they were two acts separated by a different animus" and thus both punishable as separate offenses. (*See id.*, p. 18).

In addressing this question, the Ohio Court of Appeals made findings of fact, which are presumed correct under 28 U.S.C. § 2254(e)(1), *see supra* p. 28 n.5, p. 34, and reasoned in relevant part as follows:

[The victim] Tameika testified that after Napier came into her room the night of the alleged rape, he grabbed her throat and told her to remove her undergarments and lay down on the bed. She stated that, while still holding her throat, Napier leaned over her and "rubbed around my vagina." Then, she testified, she started crying and Napier proceeded to rape her.

As the state correctly points out, two different acts do not need to be spatially or temporally distinct to be carried out with a separate animus. *State v. Barnes* (1981), Ohio St.2d 13, 427 N.E.2d 517. However, the state's argument that the instant case is similar to *Barnes* is not entirely persuasive. In *Barnes*, the Ohio Supreme Court held that the defendant committed two separate and distinct offenses by engaging in fellatio followed immediately by vaginal intercourse. As observed by Justice Celebrezze, *Barnes* involved "different, multiple sexually assaultive acts *** which resulted in two chargeable rape offenses." *Id.* at 15, 427 N.E.2d at 519 (Celebrezze, J., concurring). "Each act was a separate and distinct offense. Each act violated a different area of the victim's body. Each act subjected the victim to a different kind of injury, pain, danger, fear, and humiliation." *Id.* The state also relies upon this court's decision in *State v. Jackson* (Feb. 15, 1984), Hamilton App. Nos. C-830331, C-830343, unreported, in which we held without discussion that the defendant acted with a separate animus when he raped a child after first applying an electric vibrator to her genital area.

Napier, on the other hand, relies upon a line of cases from the Cuyahoga Court of Appeals which analyze the issue in terms of whether there were "multiple, independent acts of forcible activity" or "one uninterrupted assaultive episode." . . . In [*State v. Abi-Sarkis,* 535 N.E.2d 745, 749 (Ohio Ct. App. 1988)], the court held that defendant's fondling of the victim immediately prior to the act of fellatio was "incidental to the act of fellatio which constituted the offense of rape and that there was no separate animuses to said conduct." . . . Similarly, in *State v. Nash* (Sept. 25, 1980), Cuyahoga App. No. 41450, unreported, the same court held that the defendant could not be convicted of two counts of gross sexual imposition in addition to rape where he had committed two subsequent acts of fondling during one continuous assault lasting fifteen minutes.

The determination of whether the defendant acted with a separate animus in committing two separate offenses is, in our view, largely a matter of what is,

or is not, contained in the record.  Here, there is no evidence of how long a time Napier rubbed around Tameika's vagina before raping her–whether it was less than a minute, five minutes, or ten minutes.  There is, furthermore, no evidence to show whether the rubbing was originally intended as its own source of gratification, from which the intent to rape was then formed, or whether the rubbing was merely incidental to the rape. Tameika testified that the rubbing occurred as Napier was leaning over her, suggesting that it was not part of any act of physically subduing her.  Her testimony that she began to cry as a result of the rubbing also indicates that the rubbing was its own injury and its own source of "danger, fear, and humiliation."  The rape, however, did not involve more than one bodily orifice and appears to have been one uninterrupted episode.

Upon review of the record, we simply cannot say that Napier has demonstrated that the vaginal rubbing and the rape were committed with the same animus.  For us to hold that the rubbing was merely incidental to the rape would require us to speculate as to length and nature of the rubbing and what was going through Napier's mind at the time.  The record is absolutely silent on these matters. . . .

(*Id.,* pp. 18-20) (state case citation omitted).

The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Constit. amend. V.  This guarantee against double jeopardy, made applicable to the states through the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 794 (1969), among other things, protects against "multiple punishments for the same offense" imposed in a single proceeding. *Missouri v. Hunter,* 459 U.S. 359, 366 (1983) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)). In the "multiple punishment" context, the Double Jeopardy Clause's protection is "limited" to ensuring that "sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Jones v. Thomas,* 491 U.S. 376, 381 (1989); *see also Ohio v. Johnson,* 467 U.S. 493, 499 (1984); *Brown v. Ohio,* 432 U.S. 161, 165 (1977).  Therefore, "the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Johnson,* 467 U.S. at 499.

In the federal courts, the test established  in *Blockburger v. United States,* 284 U.S.

299, 304 (1932), is normally used to determine whether two offenses are sufficiently different to allow the imposition of cumulative punishment. *Johnson,* 467 U.S. at 499 n.8; *see also Brown,* 432 U.S. at 166. However, the *Blockburger* test, a rule of statutory construction for federal statutes, does not necessarily control the inquiry into the intent of a state legislature. *Johnson,* 467 U.S. at 499 n.8; *Banner v. Davis,* 886 F.2d 777, 780-82 (6th Cir. 1989). Instead, when assessing the intent of a state legislature, the federal courts must defer to and are bound by the state courts' construction of their own statutes. *Hunter,* 459 U.S. at 368 (citing *O'Brien v. Skinner,* 414 U.S. 524, 531 (1974)); *see also Johnson,* 467 U.S. at 499; *Brown,* 432 U.S. at 167; *Banner,* 886 F.2d at 780. "Even if the crimes are the same under *Blockburger,* if it is evident that a state legislature intended to authorize cumulative punishments [for them, the federal] court's inquiry is at an end." *Johnson,* 467 U.S. at 499 n.8; *see also Hunter,* 459 U.S. at 368-69 ("Where . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger,* a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial" without violating the Double Jeopardy Clause.); *Banner,* 886 F.2d at 780-82.

As the Ohio Court of Appeals apparently understood in ruling on petitioner's double jeopardy claim on direct appeal, the Ohio legislature's intent in the multiple punishment area may be discerned from the state multiple-count statute, Ohio Rev. Code § 2941.25. *See State v. Rance,* 710 N.E.2d 699, 635 (Ohio 1999); *see also Jones v. Baker,* 35 F.3d 566 (table), Nos. 93-3589, 93-3625, 1994 WL 464191, at **3 (6th Cir. Aug. 26, 1994) (unpublished), *cert. denied,* 513 U.S. 1164 (1995); *Woodfork v. Russell,* 19 F.3d 20 (table), No. 92-4301, 1994 WL 56933 (6th Cir. Feb. 24, 1994) (unpublished). The statute provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

The Ohio Supreme Court has held that this provision permits the trial court to

convict and impose cumulative sentences for two or more offenses arising from the same incident if the offenses (1) are of dissimilar import; or (2) are of similar import, but were committed separately or with separate animus. *Rance,* 710 N.E.2d at 636. The applicable test for deciding the issue potentially involves a two-step analysis under the state statute. First, if the statutory elements of the various crimes, considered "in the abstract" without regard to the particular facts of the case, are found to be of dissimilar import because they do not "correspond to such a degree that the commission of one crime will result in the commission of the other," the multiple convictions and punishments are permitted and the court's inquiry ends. *Id.* On the other hand, if the offenses are found to be of similar import, the second level of inquiry is triggered requiring the court to determine whether or not the defendant may be cumulatively punished for them because, as a factual matter, they were committed separately or with a separate animus. *See id.; see also State v. Jones,* 676 N.E.2d 80, 81-82 (Ohio 1997). This determination does not turn on "the presence or absence of any specific factors," but rather is based on the particular facts of each case as gleaned from the record. *Jones,* 676 N.E.2d at 81-82.

Here, the Ohio Court of Appeals properly engaged in this two-step inquiry in adjudicating the merits of petitioner's double jeopardy claim, concluding first that the gross sexual imposition and rape counts charged against petitioner are allied offenses of similar import when viewed in the abstract and second that multiple punishments could nevertheless be imposed because the little evidence there was in the record supported the finding that the offenses were two separate acts. As discussed above, *see supra* p. 40, this federal court is bound by the Ohio court's interpretation of the state criminal statutes as showing that the gross sexual imposition and rape crimes are allied offenses of similar import. Therefore, the only remaining issue is whether the trial court's determination, upheld on direct appeal, that the two charged offenses were separate acts for which cumulative punishments could be imposed, as opposed to "one uninterrupted assaultive episode without a separate animus," constituted an unreasonable application of clearly-established Supreme Court precedents addressing double jeopardy, "multiple punishment" violations or was unreasonable in light of the record evidence. *See* 28 U.S.C. §2254(d); *see supra* p. 37.

The Supreme Court has cautioned that the "Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units." *Brown,* 432 U.S. at 169. Conversely, however, as the Ohio Court of Appeals recognized, "two different acts do not need to be spatially or temporally distinct to be carried out with a separate animus" for purposes of permitting the imposition of cumulative punishments under Ohio Rev. Code

41

§ 2941.25(B).  (*See* Doc. 17, Ex. H, p. 18).  Indeed, upon review of Ohio case-law, this Court has found a number of cases not cited by the Ohio Court of Appeals in the instant matter, which upheld the imposition of cumulative sentences under § 2941.25(B) based on the determination that separate acts of gross sexual imposition were committed during a single assaultive incident involving one victim.  *See, e.g., State v. Austin,* 741 N.E.2d 927, 929 (Ohio Ct. App.) (where the record did not reflect that the defendant's acts of touching the victim's breast with his hand and kissing the victim's breast with his mouth occurred in a "single, simultaneous instance," and where it was "acknowledged that the acts occurred separately but in close proximity of time during the same extended assault of the victim," the acts were held to be "of sufficiently separate character both in terms of the animus of the defendant and in terms of the sense of violation undoubtedly experienced by the victim, so as to constitute separate crimes" subject to cumulative punishment under Ohio Rev. Code § 2941.25), *appeal dismissed,* 738 N.E.2d 383 (Ohio 2000); *State v. Moralevitz,* 433 N.E.2d 1280, 1285 (Ohio Ct. App. 1980) (acts of sexual contact, which included placing finger between the victim's legs, putting hand on victim's chest, and putting tongue between victim's legs, that occurred during single assaultive incident constituted offenses of "similar kind committed separately" within the meaning of § 2941.25(B)); *State v. Washington,* No. 01AP0727, 2002 WL 755437 (Ohio Ct. App. Apr. 30, 2002) (unpublished) (several acts of touching victim in "improper places," although close in proximity, constituted multiple gross sexual imposition offenses "and not a single, simultaneous act" under § 2941.25(B)).

In this case, the Ohio Court of Appeals expressed concern about the lack of evidence introduced at trial on the charged gross sexual imposition offense given cases relied on by petitioner from the Cuyahoga County Appeals Court, wherein it was determined that the defendant could not be convicted of gross sexual imposition offenses in addition to rape based on acts of "fondling," held to be "incidental to" the rape offense, that occurred during the "uninterrupted," "continuous" assault of the victim.  (*See* Doc. 17, Ex. H, p. 19).  Here, however, the charged gross sexual imposition did not involve the mere "fondling" of the victim, but rather as in *Washington, supra,* 2002 WL 755437, at *2, the rubbing of the victim's pubic area.  Specifically, the following evidence regarding this offense was elicited at trial during the victim's direct examination:

Q.  When he made you lay down on the bed, what did he do?  Did he lay down on the bed too, or was he still standing, or what was he doing?

A.  He was leaning over me.

42

Q. Okay. What did he do to you?

A. He took one of his hands, rubbed around my vagina.

Q. Okay.

A. And I started crying even more, and then he took his penis and put it in my vagina.

(Doc. 18, Attachment 2, Tr. 238).

As the Ohio Court of Appeals pointed out, this evidence was minimal. Moreover, it appears from the victim's testimony that the rape immediately followed the rubbing of the victim's vaginal area. Nevertheless, both the jury and trial court reasonably could conclude from this evidence that the improper touching, which occurred consecutively to and not simultaneously with the subsequent rape offense, was "of sufficiently separate character both in terms of the animus of the defendant and in terms of the sense of violation undoubtedly experienced by the victim" to constitute a separate crime subject to cumulative punishment under Ohio Rev. Code § 2941.25(B). *Austin,* 741 N.E.2d at 929. In this case, as in *Jones,* 676 N.E.2d at 82, the jury, which is presumed to follow the instructions given to it by the trial judge, was charged to "consider each count and the evidence applicable to each count separately" and that the "charges set forth in each count in the indictment constitute a separate and distinct matter." (Doc. 18, Attachment 3, Tr. 417). The jury returned guilty verdicts on both the rape and gross sexual imposition counts. Having concluded there was sufficient evidence before the jury to justify a finding that the two offenses were committed separately, the state trial and appellate courts would have been remiss if they had reached the opposite conclusion advocated by petitioner and effected a merger of the offenses for sentencing purposes. *Cf. Jones,* 676 N.E.2d at 82.

Accordingly, this Court concludes under the applicable standard of review set forth in 28 U.S.C. § 2254(d) that the Ohio Court of Appeals' challenged adjudication of petitioner's double jeopardy claim neither was contrary to nor involved an unreasonable application of clearly established federal law as determined by the Supreme Court in addressing double jeopardy, "multiple punishment" violations and was reasonable in light of the evidence presented at petitioner's state criminal trial. Therefore, petitioner is not entitled to federal habeas relief based on his claim alleged in Ground Two that the Ohio Court of Appeals violated his constitutional rights in overruling his assignment of error alleging a double jeopardy violation on direct appeal.

43

**D. Petitioner Is Not Entitled To Relief Based On The Claim Alleged In Ground Three That The Evidence Was Insufficient To Support The Trial Court's Determination Of Guilt On The Sexually Violent Predator Specification**

In Ground Three of the amended petition, petitioner asserts that the evidence was insufficient to support his conviction on the sexually violent predator specification attached to the rape count. (Doc. 3, AMENDED PETITION ADDENDUM to Page 4). He contends that his prior conviction in 1993 for gross sexual imposition could not be used to establish his eligibility for adjudication as a sexually violent predator under Ohio Rev. Code § 2971.01(H), because the prior offense was committed before the January 1, 1997 effective date of the specification statute. (*See id.*).

As an initial matter, petitioner did not present this ground for relief to the Ohio courts as an independent claim of error, but rather as an ineffective assistance of appellate counsel claim based on his attorney's failure to raise the issue in an assignment of error on direct appeal. (*See* Doc. 17, Ex. L, pp. 1, 3-4). This Court, therefore, will address the sufficiency of evidence issue as it was presented to the state courts, as an ineffective assistance of appellate counsel claim.

As discussed above in addressing Ground Four, *see supra* pp. 9-10, the *Strickland* test governs the resolution of petitioner's ineffective assistance of appellate counsel claim. Under this test, petitioner must demonstrate both (1) his counsel's failure to raise the sufficiency of evidence claim on direct appeal was objectively unreasonable based on all the circumstances surrounding the case, and (2) the outcome of his appeal would "reasonably likely have been different" if the claim had been presented by counsel to the Ohio Court of Appeals as an assignment of error. *See Strickland,* 466 U.S. at 687-88, 695.

As mentioned above in addressing Ground One, *see supra* p. 27, Ohio Rev. Code § 2971.01(H)(1) defines a "sexually violent predator" as a person (1) "who has been convicted of or pleaded guilty to committing, *on or after the effective date of this section,* a sexually violent offense," and (2) "is likely to engage in the future in one or more sexually violent offenses." (Emphasis added). It appears, as argued by petitioner, that the effective date of this statutory provision was January 1, 1997 and that, therefore, the trial court could not rely on petitioner's prior 1993 conviction for gross sexual imposition to prove petitioner had been convicted of committing a sexually violent offense under the first prong of § 2971.01(H)(1). However, contrary to petitioner's contention, the trial court did not rely on petitioner's 1993 conviction, but rather his conviction on the underlying

rape charge, when it found that petitioner had been convicted of a sexually violent offense within the meaning § 2971.01(H)(1).  (*See* Doc. 18, Attachment 4, Tr. 498-99).

In his application to the Ohio Court of Appeals for reopening of his direct appeal, wherein the ineffective assistance of appellate counsel claim was first raised, petitioner cited as support for his position an unpublished decision from the Third District Ohio Court of Appeals, *State v. Reigle,* No. 5-2000-14, 2000 WL 1682520 (Ohio Ct. App. Nov. 9, 2000) (unpublished), *appeal dismissed*, 744 N.E.2d 192 (Ohio 2001).  In *Reigle,* which was decided almost a full year *after* the Ohio Court of Appeals issued its final ruling in petitioner's case, the Third District appellate panel held that "the state may not rely on the underlying charge contained in the indictment," but instead "must show that the accused has been convicted of a sexually violent offense prior to conviction on the offense charged in the indictment," in order to prove the first prong of § 2971.01(H)(1).  *Id.* at *5.  This holding was recently adopted by the Fifth District Court of Appeals in another unpublished decision, *State v. Smith,* No. CA-957, 2003 WL 21489929, at *3 (Ohio Ct. App. June 19, 2003) (unpublished), *appeal granted,* 797 N.E.2d 511 (Ohio 2003).  However, it is not the consensus of all the Ohio appellate courts, and indeed, may have been the basis for the Ohio Supreme Court's recent granting of an appeal in *Smith*.  In contrast, also in unpublished decisions, the Eighth and Tenth District Courts of Appeals have considered a defendant's conviction on the underlying charge of a sexually violent offense sufficient to satisfy this requirement of § 2971.01(H)(1).  *See, e.g., State v. Williams,* No. 80615, 2002 WL 1992358, at *6 (Ohio Ct. App. Aug. 29, 2002) (unpublished), *appeal dismissed,* 781 N.E.2d 1019 (Ohio 2003); *Haynes, supra,* 2002 WL 1969636, at *15; *State v. Vlahopoulos,* No. 78206, 2001 WL 995201, at *14 (Ohio Ct. App. Aug. 30, 2001) (unpublished) (wherein the defendant conceded that his conviction on the underlying rape charge satisfied "the first essential element of a sexually violent predator specification"); *Oldham, supra,* 1999 WL 304314, at *5.

Ohio Rev. Code § 2971.02, enacted at the same time as § 2971.01, "anticipates that the determination of the specification will take place in a proceeding after the defendant has been found guilty of the underlying offense." *Harrod, supra,* 1999 WL 797980, at *3; *cf. Sherrard, supra* 2003 WL 187592, at *4 ("an essential element of a sexually violent predator specification is a conviction for the underlying sexually violent offense to which the specification is attached).  Therefore, certainly at the time of petitioner's conviction and appeal, it was not unreasonable to interpret these statutory provisions as permitting the defendant's conviction on the underlying charge of a sexually violent offense to count in satisfying the first element of a "sexually violent predator" set forth in Ohio Rev. Code § 2971.01(H)(1).

Accordingly, as discussed above in addressing the ineffective assistance of counsel claims alleged in Ground Four, *see supra* p. 14, this Court concludes that the failure of petitioner's appellate counsel to anticipate or predict the Third and Fifth District appellate courts' decisions in *Reigle* and *Smith*, which are contrary to cases decided by other Ohio appellate courts, does not fall below the objective standard of reasonableness under the first prong of the *Strickland* test. Petitioner, therefore, is unable to demonstrate he is entitled to habeas corpus relief based on the claim alleged in Ground Three of the amended petition.

### IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended (Doc. 3), and petitioner's summary judgment motion (Doc. 19), be DENIED with prejudice.

2. A certificate of appealability should not issue with respect to the ineffective assistance of counsel claims alleged in Ground Four, which have been addressed on the merits, because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). However, a certificate of appealability should issue with respect to the constitutional claims alleged in Grounds One, Two and Three because reasonable jurists could debate whether these claims should have been resolved in a different manner and, alternatively, whether the issues presented in these grounds for relief are "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith," and therefore GRANT petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 02/23/04                      s/David S. Perelman

46

United States Magistrate Judge

P:\JS\Law Clerk filings\01cv511rr.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Ronald Napier,
      Petitioner,

             v.

James Haviland,
      Respondent.

             Case No. C-1-01-511
             (Spiegel, J.; Perelman, M.J.)

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable David S. Perelman, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).